No. 23-1117

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

---

CRYSTALLEX INTERNATIONAL CORPORATION,

*Plaintiff-Appellee*,

RED TREE INVESTMENTS, LLC,

*Proposed Intervenor-Appellant*,

v.

BOLIVARIAN REPUBLIC OF VENEZUELA; PETRÓLEOS DE
VENEZUELA, S.A.; PDV HOLDING, INC.; and
CITGO PETROLEUM CORP.,

*Defendants-Appellees*.

---

**Appeal from the United States District Court for the District of Delaware**

---

**RESPONSE BRIEF OF PETRÓLEOS DE VENEZUELA, S.A.;
PDV HOLDING, INC.; AND CITGO PETROLEUM CORP.**

---

Joseph D. Pizzurro
Kevin A. Meehan
Juan O. Perla
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Ave.
New York, NY  10178
(212) 696-6000

Hashim M. Mooppan
  *Counsel of Record*
Gregory M. Shumaker
Brinton Lucas
Caleb P. Redmond
JONES DAY
51 Louisiana Ave. NW
Washington, DC  20001
(202) 879-3939
hmmooppan@jonesday.com

*Counsel for Petróleos de Venezuela,
S.A.*

*Counsel for CITGO Petroleum
Corporation and PDV Holding, Inc.*

(additional counsel listed on inside cover)

Nathan P. Eimer
Daniel D. Birk
Emily Sullivan
EIMER STAHL LLP
224 South Michigan Ave., Suite 1100
Chicago, IL  60605
(312) 660-7600

*Counsel for CITGO Petroleum
Corporation and PDV Holding, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Third Circuit L.A.R. 26.1, Appellees Petróleos de Venezuela, S.A. (PDVSA), PDV Holding, Inc. (PDVH), and CITGO Petroleum Corporation (CITGO) hereby disclose as follows:

PDVSA is a Venezuelan corporation that is wholly owned by the Venezuelan government, Bolivarian Republic of Venezuela (the Republic).  PDVH is a wholly owned subsidiary of PDVSA.  CITGO is a wholly owned subsidiary of CITGO Holding, Inc., which is a wholly owned subsidiary of PDVH.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES .................................................................. iii

INTRODUCTION ................................................................................1

JURISDICTIONAL STATEMENT ..........................................................4

STATEMENT OF THE ISSUE PRESENTED ........................................4

STATEMENT OF RELATED CASES .....................................................4

STATEMENT OF THE CASE ..................................................................5

SUMMARY OF ARGUMENT ..............................................................14

STANDARD OF REVIEW ....................................................................17

ARGUMENT ..........................................................................................18

I.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING
     RED TREE'S REQUEST FOR MANDATORY INTERVENTION ...............................18

     A.   Red Tree Lacks A Cognizable Interest In The PDVH Shares ...............19

          1.   Red Tree's money judgments do not create a specific
               legal interest in the PDVH shares....................................19

          2.   The district court's contingent-writ declaration does not
               grant Red Tree a specific legal interest in the PDVH shares ..........24

          3.   Red Tree is judicially estopped from arguing that its
               judgments or the contingent-writ declaration create an
               interest in the PDVH shares............................................27

     B.   Denial Of Intervention Would Not Impair Red Tree's Putative
          Interest In The PDVH Shares....................................................29

     C.   ConocoPhillips Will Adequately Protect Red Tree's Asserted
          Interest In The Sale Of The PDVH Shares ..............................32

     D.   Under Red Tree's Own Theory For Intervention, Its Motion
          Was Untimely ..................................................................34

II.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING
     RED TREE'S REQUEST FOR PERMISSIVE INTERVENTION...................................37

CONCLUSION ......................................................................................41

COMBINED CERTIFICATIONS............................................................42

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant:small-caps">Cases</span>

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ................................................................38

*Bender v. Williamsport Area Sch. Dist.,*
    475 U.S. 534 (1986) ................................................................38

*Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pennsylvania,*
    701 F.3d 938 (3d Cir. 2012) ............................................34, 36, 37

*Blount-Hill v. Zelman,*
    636 F.3d 278 (6th Cir. 2011) ..................................................17

*Brody ex rel. Sugzdinis v. Spang,*
    957 F.2d 1108 (3d Cir. 1992) ............................................29, 38

*Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA,*
    779 F.3d 214 (3d Cir. 2015) ..................................................27

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela,*
    932 F.3d 126 (3d Cir. 2019) ..........................................4, 6, 26

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela,*
    24 F.4th 242 (3d Cir. 2022) ......................................1, 4, 6, 7

*Delaware Valley Citizens' Council for Clean Air v. Pennsylvania,*
    674 F.2d 970 (3d Cir. 1982) ............................................17, 32

*Delgrosso v. Spang & Co.,*
    903 F.2d 234 (3d Cir. 1990) ..................................................28

*Deutsche Bank Nat'l Tr. Co. v. FDIC,*
    717 F.3d 189 (D.C. Cir. 2013) ..............................................21

*Donaldson v. United States,*
    400 U.S. 517 (1971) ................................................................19

*Eaves v. Cnty. of Cape May,*
    239 F.3d 527 (3d Cir. 2001) ..................................................20

*Glover v. Wells Fargo Home Mortg.,*
    629 F. App'x 331 (3d Cir. 2015) ............................................32

*Hanson v. Denckla,*
    357 U.S. 235 (1958) ................................................................20

*Hoots v. Pennsylvania*,
495 F.2d 1095 (3d Cir. 1974) ............................................................35

*In re Asbestos Prods. Liab. Litig. (No. VI)*,
873 F.3d 232 (3d Cir. 2017) .............................................................13

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
134 F.3d 133 (3d Cir. 1998) .............................................................35

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ..............................................................17

*In re White Savage Assocs.*,
860 F.2d 1090, 1988 WL 111612 (9th Cir. Oct. 12, 1988) ................31

*Liberty Mut. Ins. Co. v. Treesdale, Inc.*,
419 F.3d 216 (3d Cir. 2005) .....................................................*passim*

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n*,
471 F.3d 377 (2d Cir. 2006) ...............................................29, 30, 31

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*,
72 F.3d 361 (3d Cir. 1995) .......................................................*passim*

*New Hampshire v. Maine*,
532 U.S. 742 (2001)...........................................................................27

*Newton v. Consol. Gas Co. of New York*,
259 U.S. 101 (1922)...........................................................................32

*OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*,
No. 19-mc-290, 2022 WL 611563 (D. Del. Mar. 2, 2022) ........*passim*

*Penn Terra Ltd. v. Dep't of Env't Res.*,
733 F.2d 267 (3d Cir. 1984) ..............................................................20

*Pennsylvania v. President U.S. of Am.*,
888 F.3d 52 (3d Cir. 2018) ............................................4, 17, 19, 32

*Pub. Serv. Co. of New Hampshire v. Patch*,
136 F.3d 197 (1st Cir. 1998)..............................................................29

*Red Tree Invs., LLC v. Petróleos de Venezuela, S.A.*,
Nos. 22-mc-68, 22-mc-69, 2022 WL 1265516
(D. Del. Apr. 28, 2022)...............................................................*passim*

*Teague v. Bakker*,
931 F.2d 259 (4th Cir. 1991) .............................................................22

*U.S. ex rel. Eisenstein v. City of New York*,
    556 U.S. 928 (2009).......................................................................38

*United States v. Alcan Aluminum, Inc.*,
    25 F.3d 1174 (3d Cir. 1994) ..............................................24, 25, 26

*United States v. Alisal Water Corp.*,
    370 F.3d 915 (9th Cir. 2004) ....................................................21, 22

*Washington Elec. Coop. v. Massachusetts Mun. Wholesale Elec. Co.*,
    922 F.2d 92 (2d Cir. 1990) ...............................................................25

STATUTES

28 U.S.C. § 1291 ...........................................................................4, 7

28 U.S.C. § 1963 ................................................................................4

Del. Code Ann. tit. 8, § 324 ..........................................................20, 26

Del. Code Ann. tit. 10, § 5081 .............................................................26

OTHER AUTHORITIES

31 C.F.R. § 591.305 .............................................................................6

31 C.F.R. § 591.309 .............................................................................6

31 C.F.R. § 591.310 .............................................................................6

31 C.F.R. § 591.407 .............................................................................6

Fed. R. Civ. P. 24 ........................................................................*passim*

Fed. R. Civ. P. 53 .........................................................................31, 32

Fed. R. Civ. P. 69 ....................................................................7, 20, 26

6 *Moore's Federal Practice - Civil* § 24.03 (2023)..............................24

## INTRODUCTION

This appeal involves an attempt by Red Tree Investments, LLC (Red Tree) to untimely intervene in proceedings to sell certain property in which it lacks any legally cognizable interest. In the underlying case, Crystallex International Corporation (Crystallex) seeks to execute on a judgment against the Bolivarian Republic of Venezuela (the Republic) through a forced sale of the shares of PDV Holding, Inc. (PDVH). Those shares are wholly owned by Petróleos de Venezuela, S.A. (PDVSA), Venezuela's state oil company, and are the means through which the Republic indirectly owns CITGO Petroleum Corporation (CITGO). *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 24 F.4th 242, 246-47 (3d Cir. 2022) (*Crystallex II*). The shares are also blocked property under regulatory sanctions imposed by the U.S. Government. *See id.* at 247-48.

Under Executive Orders and regulations issued by the U.S. Treasury Department's Office of Foreign Assets Control (OFAC), a license from OFAC is required to, among other things, attach or transfer the PDVH shares. *Id.* Crystallex obtained an attachment before these restrictions took effect, but has been denied a license to effectuate a transfer at this time. *Id.* at 247-48 & n.3. By contrast, although Red Tree holds judgments against PDVSA, the district court has merely issued an order (the "contingent-writ declaration") conditionally stating that it would issue a writ of attachment in the future *if* OFAC were to allow that by granting a license or

1

modifying its regulations.  *See* JA 3 n.2.  As OFAC has not taken either of those actions, and no writ of attachment has been issued or served, Red Tree currently has no attachment ("conditional" or otherwise) against the PDVH shares.

Nevertheless, in November 2022, Red Tree moved to intervene to participate in the process for selling the PDVH shares to satisfy Crystallex's judgment.  The district court denied the motion as untimely, emphasizing that Red Tree has been aware of this litigation since at least August 2019 and had offered no good reason for its delay.  JA 3-4.  On appeal, Red Tree objects that it "could not have intervened in this matter years before it even obtained a judgment against PDVSA [in January 2022], much less [a writ of] attachment against the specific shares," the issuance of which the district court contingently authorized in April 2022.  Br. 19.  Red Tree's objection, however, is internally inconsistent and without merit.

On one hand, Red Tree cannot justify the timing of its intervention motion by invoking its money judgments and the contingent-writ declaration, because none of those decrees grants Red Tree a specific legal interest in the PDVH shares.  Unless and until it actually attaches the shares—the likelihood and timing of which cannot be predicted—Red Tree merely has a general economic interest in PDVSA's assets.  Its motion was therefore premature, as Red Tree itself admits that such an interest is legally insufficient to intervene in the process for selling the PDVH shares to satisfy Crystallex's judgment and attachment.  Indeed, Red Tree is judicially estopped from

2

arguing otherwise, because it persuaded the district court to register the judgments and enter the declaration in the absence an OFAC license only by taking the position that those decrees would create *no* property interest in the PDVH shares.

On the other hand, if Red Tree did not need an attachment to intervene, then its motion came far too late. Even before Red Tree obtained its judgments and the contingent-writ declaration, it had the same general economic interest as a creditor of PDVSA. Nor has Red Tree even justified the six-month delay between the declaration and its intervention motion. During that period, the Venezuela Parties, Crystallex, and a non-party creditor (ConocoPhillips) all paid the hefty fees of a court-appointed special master to participate in shaping the sale process. The court's sale procedures order granted these three groups special participation rights in the sale process, and it would be prejudicial to allow Red Tree to swoop in now and seek to modify the order to assert such rights. Relatedly, denial of intervention does not harm Red Tree, as intervention would not even secure it the participation rights it seeks. Those rights, which are not tied to formal-party status, are limited to those who have paid an equal share of the special master's fees, which Red Tree is unwilling to do. Moreover, ConocoPhillips, which has participation rights and is otherwise identically situated to Red Tree, will adequately protect Red Tree's asserted economic interest in ensuring that a sale does not prejudice other creditors.

For each of those reasons, the district court did not abuse its discretion in denying Red Tree intervention, and this Court can affirm on any of these grounds.

## JURISDICTIONAL STATEMENT

The district court exercised subject-matter jurisdiction under 28 U.S.C. § 1963 over Crystallex's action to execute a judgment against the Republic. *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 136-38 (3d Cir. 2019) (*Crystallex I*). The court denied Red Tree's motion to intervene on January 11, 2023. JA 1-6. Red Tree timely appealed on January 19, 2023. JA 7. This Court has jurisdiction under 28 U.S.C. § 1291 pursuant to the collateral-order doctrine. *Pennsylvania v. President U.S. of Am.*, 888 F.3d 52, 57 (3d Cir. 2018).

## STATEMENT OF THE ISSUE PRESENTED

Whether the district court abused its discretion in denying Red Tree's motion to intervene. JA 1-6, 760-75, 779-800, 814-31.

## STATEMENT OF RELATED CASES

This case was previously before this Court in three sets of appeals. Nos. 22-1606, 22-8024 (2022); 24 F.4th 242 (2022) (Nos. 21-1276, 21-1277, 21-1289); 932 F.3d 126 (2019) (Nos. 18-2797, 18-2889, 18-3124).

This appeal is related to Red Tree's suits against PDVSA, as well as actions brought by Red Tree and other creditors of PDVSA or the Republic seeking to attach the PDVH shares: *Red Tree Invs., LLC v. Petróleos de Venezuela, S.A.*, Nos. 19-cv-

2519, 19-cv-2523 (S.D.N.Y.), *appeal pending*, Nos. 22-225, 22-232 (2d Cir.); *Red Tree Invs., LLC v. Petróleos de Venezuela, S.A.*, Nos. 22-mc-68, 22-mc-69 (D. Del.); *Gold Reserve Inc. v. Bolivarian Republic of Venezuela*, No. 22-mc-453 (D. Del.); *Siemens Energy, Inc. v. Petróleos de Venezuela, S.A.*, No. 22-mc-347 (D. Del.); *ConocoPhillips Gulf of Paria B.V. v. Corporación Venezolana del Petróleo, S.A.*, No. 22-mc-264 (D. Del.); *Koch Minerals Sarl v. Bolivarian Republic of Venezuela*, No. 22-mc-156 (D. Del.); *Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, No. 21-mc-481 (D. Del.); *ACL1 Invs. Ltd v. Bolivarian Republic of Venezuela*, No. 21-mc-46 (D. Del.); *Northrop Grumman Ship Sys., Inc. v. Ministry of Defense of the Republic of Venezuela*, No. 20-mc-257 (D. Del.); *Phillips Petroleum Co. Venezuela Ltd. v. Petróleos de Venezuela, S.A.*, No. 19-mc-342 (D. Del.); *OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, No. 19-mc-290 (D. Del.).

## STATEMENT OF THE CASE

1.    In 2016, Crystallex obtained a $1.4 billion judgment (including interest) against the Republic in the D.C. District Court based on the expropriation of its property by the Venezuelan government in 2011.  Following substantial payments by the Republic, that judgment stands at roughly $1 billion.  *See* JA 724.

In 2017, Crystallex registered its judgment in the Delaware District Court and asked the court to execute on the judgment by attaching and selling PDVSA's shares in PDVH.  The district court issued a writ of attachment, which was served on PDVH

in 2018, and this Court affirmed the threshold ruling that, under the Foreign Sovereign Immunities Act, the PDVH shares were not immune from attachment to satisfy the judgment against the Republic. *Crystallex I*, 932 F.3d at 132-33.

In 2019, while the appeal was pending, the President of the United States "blocked any transfer or dealing in PDVSA's property," and OFAC prohibited "'the enforcement of any lien, judgment, arbitral award, decree, or other order through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect [blocked] property or interests in [blocked] property,'" absent "'a specific license issued by OFAC.'" *Crystallex II*, 24 F.4th at 247 (quoting 31 C.F.R. § 591.407); *see OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, No. 19-mc-290, 2022 WL 611563, at *3 n.5 (D. Del. Mar. 2, 2022) (*OIEG*) (explaining that Crystallex obtained a writ of attachment in 2017 only "because Venezuelan property in the United States had not yet been blocked"). OFAC's regulations further define a prohibited "transfer" to include any "act or transaction," "the purpose, intent, or effect" of which is to "create" or "alter," either "directly or indirectly," any "right" or "interest" "with respect to" the PDVH shares, including "the issuance, docketing, or filing of, or levy of or under, any judgment, decree, attachment, injunction, execution, or other judicial or administrative process or order." 31 C.F.R. § 591.310. The covered property interests include any "interest of any nature whatsoever, direct or indirect," *id.* § 591.305—"whether present, future, or contingent," *id.* § 591.309.

On remand, the Republic, PDVSA, PDVH, and CITGO—collectively, the Venezuela Parties (VPs)—moved to quash the writ on the merits, but the district court denied the motion as procedurally barred.  JA 291-306.  The court also held that OFAC's regulations did not prohibit it from taking preparatory steps to determine the contours of a process for selling the PDVH shares, and that it would proceed despite a request by the U.S. Government to postpone such steps.  JA 307-13.  The VPs appealed, but this Court held that it lacked jurisdiction under 28 U.S.C. § 1291.  *Crystallex II*, 24 F.4th at 246.

2.    In May 2021, the district court appointed a special master to design and implement a process to sell the PDVH shares pursuant to Delaware law as incorporated by Federal Rule of Civil Procedure 69(a)(1).  JA 309-10, 342-46.  The court directed the special master to allow (1) Crystallex, (2) the VPs, and (3) two non-party ConocoPhillips subsidiaries (ConocoPhillips)—collectively, the sale process parties—to review and comment on the special master's proposal.  JA 345, 716.  During the next 17 months, the special master submitted seven proposed orders and responded to objections from the sale process parties.  JA 717-19.  At the time Red Tree filed its notice of appeal, the sale process parties had each paid almost $1.2 million to cover the special master's over $3.5 million in fees.  Crystallex's Opp. to Mot. to Expedite Appeal 6.

Although ConocoPhillips holds judgments against PDVSA, it has not obtained an attachment against the PDVH shares and did not seek to intervene to become a formal party to this action. *See* JA 782; *OIEG*, 2022 WL 611563, at *9. Nonetheless, the district court allowed ConocoPhillips to participate as a sale process party because ConocoPhillips, who had been involved from the outset, agreed to pay an equal share of the special master's fees in designing and implementing the sale process. JA 782. Conversely, certain entities who had intervened in the case—namely, Rosneft Trading S.A. and various bondholders, all of whom claimed secured interests in shares of a PDVH subsidiary, JA 184-85—did not become sale process parties. JA 716. The bondholders initially tried to participate in shaping the sale process, but they abandoned the effort once the district court conditioned participation on paying a per capita share of the special master's fees. JA 337-41.

On October 7, 2022, the district court adopted the special master's final proposal and signed the sale procedures order. JA 716, 753. The order gives the special master six months to "attempt to gain clarity" from OFAC regarding "its support for (or non-opposition to), the launch" of the sale process. JA 726. After the special master does so and submits a recommendation to the court "as to whether (and when)" to launch, the sale process parties will have an opportunity to object, and the court will then "make a determination regarding when to trigger" the launch, "with or without a license from OFAC." JA 726-27. If the district court ultimately

were to decide to launch the sale process, it would trigger a foreclosure-style auction that would be advertised in newspapers and invite bidders to offer bids for 100% (or fewer) of the PDVH shares. *See* JA 722-24, 731-32. The sale process parties would possess certain consultation and objection rights during this process, including the right to object to marketing materials, consult on and object to bids, and object to changes to the bidding procedures. JA 726-28, 731, 735. Any additional judgment creditor that obtains a timely attachment on the PDVH shares could seek to have its judgment included as part of the sale process. JA 740-41.

3.    Meanwhile, in February 2019, Red Tree filed two separate lawsuits against PDVSA alleging that PDVSA had defaulted on several agreements. *See Red Tree Invs., LLC v. Petróleos de Venezuela, S.A.*, Nos. 22-mc-68, 22-mc-69, 2022 WL 1265516, at *1 (D. Del. Apr. 28, 2022). On January 6, 2022, Red Tree secured judgments totaling about $246 million from a New York District Court. *Id.* On February 8, 2022, it sought to register its judgments in the Delaware District Court in order to obtain a writ of attachment on the PDVH shares. *Id.*

Red Tree faced a problem, however, because OFAC's regulations prohibited attachment of the blocked PDVH shares, or the creation of any other interest in those shares, without a specific license from OFAC. *See supra* at 6. Despite that restriction, Red Tree claimed it could register its judgments on the theory that they "merely determined the parties' rights and obligations under a contract" and did

"not[,] in and of themselves, cause any transfer of property." 22-mc-69 Docket Entry (D.E.) 11 at 17 (cleaned up). Red Tree also requested "only that the Court find that it is entitled to a writ of attachment," but stay delivery of the writ to the U.S. Marshals "until the applicable sanctions are lifted or Red Tree is granted an appropriate license." 22-mc-69 D.E. 3 at 19. Red Tree took the position that this limited "relief will not create any interest in the PDVH shares nor alter any other property interest in those shares." *Id.* In its words, "[u]nder Delaware law, only … issuing the writ to the U.S. Marshals Service and having a U.S. Marshal execute that writ … would have any effect on PDVSA's property interest," *id.* at 18, as a "writ of attachment that depends on OFAC approval is at best an 'expectancy,' not a property right," 22-mc-69 D.E. 11 at 11.

On April 28, 2022, the district court granted in part Red Tree's requested relief. *Red Tree*, 2022 WL 1265516, at *1. In doing so, the court adopted the same approach it had taken in its earlier *OIEG* decision, finding that Red Tree was "similarly situated to ConocoPhillips" and entitled to "the same relief." *Id.* at *3 (relying on *OIEG*, 2022 WL 611563, at *8-11). The court held that Red Tree could register its judgments on the theory that "registration of a judgment 'is not connected to any specific blocked property,' so 'the OFAC regulations are not implicated.'" *Id.* at *2. The court also expressed its intent to issue Red Tree a writ of attachment at some future time, but decided that it needed to "wait[] for a specific license or the

material modification of the sanctions regime before" doing so. *Id.* at *3. In the *OIEG* decision, the court had concluded that, by authorizing the future issuance of a writ of attachment "conditioned" on OFAC action for ConocoPhillips, no "concrete interest in the PDVH Shares" would be created and "no property interests" in them would be "transferred." *OIEG*, 2022 WL 611563, at *8-9 & nn.16-17. The court there further stated that its order awaiting OFAC action would "not establish a 'contingent' proper[t]y interest prohibited by the regulations." *Id.* at *6. Taking the same approach with Red Tree, the court expressly directed the clerk "***not*** to issue or serve the writ of attachment until further order of the Court." *Red Tree*, 2022 WL 1265516, at *1. No writ of attachment has since been issued or served. Thus, contrary to Red Tree's assertion, it does not even have a "conditional attachment[]," Br. 19, much less an actual "attachment against" the shares, Br. 1.

One other judgment creditor of PDVSA has also obtained an order contingently stating that the district court would issue a writ of attachment if OFAC were to allow that in the future: the Dresser-Rand Company (which has since merged into Siemens Energy, Inc.). *See Siemens Energy, Inc. v. Petróleos de Venezuela, S.A.*, No. 22-mc-347 (D. Del.), D.E. 14, 18. More than a half-dozen other creditors of PDVSA or the Republic are pursuing similar orders. *See supra* at 4-5.

**4.**    On November 4, 2022, Red Tree filed a motion to intervene and to modify the sale procedures order in order to become a sale process party. JA 757-

78.  In its motion, Red Tree argued it should not have to pay any of the special master's fees that had already been incurred.  JA 768.  Red Tree also insisted it should not have to evenly split any future fees with the sale process parties (25% apiece), but instead should pay a minimal percentage in proportion to its smaller judgments (6%), leaving the VPs, Crystallex, and ConocoPhillips to cover the balance (94%).  JA 768, 798, 811.

Crystallex opposed Red Tree's motion primarily on the ground that it was untimely, JA 790, while the VPs opposed primarily on the ground that Red Tree lacked a cognizable interest in the sale process under Federal Rule of Civil Procedure 24(a), JA 819-20.  Both Crystallex and the VPs further contended that Red Tree should not be permitted to participate as a sale process party because it opposed paying an equal share (25%) of all the special master's fees, including those already incurred.  JA 796-99, 828-29.

The district court denied both mandatory and permissive intervention.  JA 1-6.  The court principally rested on the ground that Red Tree's motion was untimely, explaining that although "Red Tree did not receive its judgment until 2022," it "clearly recognized the potential impact of this proceeding on its ultimate efforts to collect as far back as 2019."  JA 3 n.2; *see* JA 3-4.  The court also was "confident that Red Tree will not be seriously harmed by the denial of its motion" because its asserted interests "can be fully protected" under the existing sale procedures.  JA 4.

In contrast, the court found that allowing intervention "will cause prejudice to the current Sale Process Parties" and will "make an already challenging process even more unwieldy and impracticable."  JA 3, 5.

The court also identified "[t]wo further considerations" supporting denial of Red Tree's motion.  JA 5.  The first was that the special master had recommended denial because "Red Tree had ample opportunity to seek inclusion as a Sale Process Party prior to the Court's entry of the Sale Procedures Order."  JA 5.  The second was Red Tree's "unwilling[ness] to pay [its] fair share" of the special master's fees and its demand for a payment "approach [that] is entirely inconsistent with the approach the Court has taken to date and appears to have nothing to recommend it."  JA 5-6.  In particular, the court reiterated that a sale process party must "pay an equal, per capita share of the Special Master's fees and expenses, to include those incurred to date and all those going forward."  JA 5.[1]

---

[1] For the same reasons, the district court denied Red Tree's additional request to be made a sale process party.  *See* JA 1.  Red Tree's opening brief does not challenge the discretionary denial of that distinct request, let alone identify any basis for appellate jurisdiction or reversal on the merits.  It has therefore forfeited any argument in that regard.  *See In re Asbestos Prods. Liab. Litig. (No. VI)*, 873 F.3d 232, 237 (3d Cir. 2017).

## SUMMARY OF ARGUMENT

**I.**     To intervene as a matter of right under Federal Rule of Civil Procedure 24(a), Red Tree must demonstrate that (1) it has a cognizable interest in the PDVH shares; (2) the interest could be impaired absent intervention; (3) its interest is not adequately protected by another party; and (4) its intervention motion was timely. Red Tree satisfies none of these requirements, much less all of them.

*First*, Red Tree lacks any cognizable interest in the PDVH shares.  It has no legal interest in that specific property—neither under its money judgments against PDVSA nor under the district court's contingent-writ declaration that it would issue a writ of attachment *if* OFAC were to allow that in the future.  Unless and until Red Tree actually attaches the shares, its intervention attempt is premature because it has no more than a general economic interest in PDVSA's assets—and even Red Tree admits that is insufficient to intervene in Crystallex's attachment proceedings. Indeed, judicial estoppel bars Red Tree from arguing otherwise.  Lacking an OFAC license to obtain any property interest whatsoever in the blocked PDVH shares, Red Tree persuaded the district court to register its judgments and enter the declaration only by disclaiming that such decrees would create such an interest.  It cannot now seek to intervene by taking the opposite position.

*Second*, intervention is not necessary to prevent impairment of Red Tree's asserted interest in shaping the bidding process for the PDVH shares as a sale process

14

party—its only rationale for intervening.  In fact, intervention would not permit Red Tree to exercise the participation rights of sale process parties at all.  The district court has granted the status of sale process party only to those who have participated in the process of designing the sale procedures and have shared equally the special master's fees.  For that reason, the court has denied sale-process-party status to intervenors who did not meet those criteria (the bondholders), and it has conferred sale-process-party status on non-parties who did (ConocoPhillips).  Because Red Tree does not meet those criteria—having sat on the sidelines while the sale procedures were designed and now refusing to pay any of the past fees or an equal share of the future fees—the district court held that it cannot be a sale process party.  Red Tree's professed rationale for intervening therefore fails on its own terms.

*Third*, ConocoPhillips will adequately protect Red Tree's asserted interest in maximizing the proceeds of a sale of the PDVH shares.  Just like Red Tree, ConocoPhillips is a non-party with money judgments against PDVSA and a contingent-writ declaration.  ConocoPhillips thus has the same economic interest as Red Tree in ensuring that a sale to satisfy Crystallex's judgment does not undervalue the shares and instead preserves their residual value for potential attachment by other non-party creditors in the future.  ConocoPhillips thus will exercise its participation rights under the sale procedures order in a manner that protects Red Tree too, especially since its outstanding judgments are over five times larger.

15

*Finally*, Red Tree's timeliness theory fails on its own terms.  As neither the money judgments against PDVSA nor the contingent-writ declaration provide Red Tree with any cognizable interest in the PDVH shares, those decrees are immaterial to intervention and cannot excuse Red Tree's delay.  And even if they mattered, Red Tree still could not justify the six-month gap between the declaration and its motion.  If Red Tree were allowed to intervene at this late stage and to exercise participation rights, that would unfairly enable it to free-ride on the sale process parties' payments and efforts.  That also would prejudice those groups' participation rights, as the district court granted the rights when there were only three participants, and has since found that adding others would make the process more unwieldy and impracticable.

**II.**    For the same reasons, the district court also acted well within its discretion to deny Red Tree's request for permissive intervention under Rule 24(b). Moreover, Red Tree does not even satisfy the minimal requirement to assert a "claim or defense" that poses common questions of law or fact with the *Crystallex* action. Because Red Tree lacks a cognizable interest in the PDVH shares, Red Tree has no "claim or defense" to assert in these proceedings at all.  Although Red Tree points to ConocoPhillips, that creditor has participation rights under the sale process order *despite not* being a formal party entitled to intervene.  Red Tree's general economic interests may warrant an amicus brief, but they do not pass the threshold requirement for permissive intervention.

**STANDARD OF REVIEW**

This Court "will overturn a district court's order denying a motion to intervene … only if the court has abused its discretion." *Pennsylvania*, 888 F.3d at 57 (cleaned up). Although an abuse of discretion occurs if the district court "appl[ies] an improper legal standard," *id.*, Red Tree does not and cannot argue that the court below committed a legal error, *see* Br. 13 ("The district court's analysis … was premised on a misunderstanding of the relief Red Tree seeks and a disregard of Red Tree's reasons for filing when it did."). Accordingly, this Court may reverse only if it is "confident" that the district court exercised its discretion "incorrect[ly]." *Pennsylvania*, 888 F.3d at 57.

"As always, [this Court] may affirm … on grounds other than those considered by the district court itself." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 143 (3d Cir. 2015); *see, e.g.*, *Delaware Valley Citizens' Council for Clean Air v. Pennsylvania*, 674 F.2d 970, 972-73 (3d Cir. 1982) (affirming denial of intervention on the district court's articulated ground as well as an additional ground); *Blount-Hill v. Zelman*, 636 F.3d 278, 283-84 (6th Cir. 2011) (affirming denial of intervention on alternative ground without reaching the district court's articulated ground).

## ARGUMENT

### I.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING RED TREE'S REQUEST FOR MANDATORY INTERVENTION

Rule 24(a)(2) authorizes intervention as of right only if (i) the movant "claims an interest relating to the property or transaction that is the subject of the action"; (ii) the movant "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest"; (iii) none of the "existing parties adequately represent that interest"; and (iv) the motion is "timely." Fed. R. Civ. P. 24(a)(2). "Each of these requirements must be met to intervene as of right," *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995), yet Red Tree satisfies none of them.

The district court principally denied intervention on the ground that Red Tree's motion was untimely. Red Tree challenges that determination, arguing that it "could not have intervened" until it first obtained its money judgments against PDVSA and the contingent-writ declaration. Br. 19. But those decrees do not create a legally cognizable interest in the PDVH shares, much less an interest that would somehow be impaired in the absence of Red Tree's intervention. Accordingly, they cannot justify Red Tree's delay, and Red Tree cannot even justify the six-month gap between the declaration and its intervention motion. For any and all of these reasons, the district court did not abuse its discretion in denying mandatory intervention.

## A.     Red Tree Lacks A Cognizable Interest In The PDVH Shares

To start, Red Tree lacks a cognizable "interest" in "the property" at issue in this action—the PDVH shares.  Fed. R. Civ. P. 24(a)(2).  Neither Red Tree's money judgments against PDVSA nor the contingent-writ declaration create a specific legal interest in the PDVH shares.  Unless and until Red Tree actually attaches the shares, it has at most a general economic interest in PDVSA's assets.  That is inadequate to support mandatory intervention—as even Red Tree concedes, Br. 19—so its intervention motion was premature.  Indeed, the doctrine of judicial estoppel bars Red Tree from reversing the position it took in the district court and arguing now that its money judgments and the contingent-writ declaration create a cognizable interest in the PDVH shares.

### 1.     Red Tree's money judgments do not create a specific legal interest in the PDVH shares

To intervene as a matter of right, an applicant must establish a "significantly protectable" interest, meaning "a cognizable legal interest, and not simply an interest of a general and indefinite character." *Pennsylvania*, 888 F.3d at 58; *see Donaldson v. United States*, 400 U.S. 517, 530-31 (1971) (explaining that "[w]hat is obviously meant" by Rule 24(a)(2) "is a significantly protectable interest," such as a "proprietary interest").  Under this standard, an applicant can intervene as of right if it has a legal "interest in a specific fund … in a case affecting that fund." *Mountain Top*, 72 F.3d at 366.  By contrast, a "mere economic interest [is generally]

insufficient to support the right to intervene," *id.*, and those who "have no property interest" or similar "protectable interest" in the specific assets or potential proceeds at issue cannot intervene as a matter of right, *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 222 (3d Cir. 2005).

Red Tree's money judgments provide it with, at most, a general economic interest in PDVSA's assets, not an "interest in [the] specific" property at issue. *Mountain Top*, 72 F.3d at 366. Far from creating any interest in the PDVH shares, Red Tree's judgments do not mention those shares and are "not connected to any specific … property." *Red Tree*, 2022 WL 1265516, at *2; *see* 22-mc-68 D.E. 1; 22-mc-69 D.E. 1. These judgments declare that PDVSA owes Red Tree money, just as any money judgment "adjudges that the defendant shall pay a sum of money to the plaintiff." *Eaves v. Cnty. of Cape May*, 239 F.3d 527, 533 (3d Cir. 2001); *see Hanson v. Denckla*, 357 U.S. 235, 246 n.12 (1958) (explaining that a "judgment *in personam* imposes a personal liability or obligation on one person in favor of another"). The judgments leave PDVSA free to satisfy its debt with whatever assets it chooses and do not constrain PDVSA's authority over its assets. To secure an interest in the PDVH shares, Red Tree must "*enforce* [its] money judgment[s]" through an attachment or other mechanism to "seize property of the defendant in order to satisfy [its] judgment[s]." *Penn Terra Ltd. v. Dep't of Env't Res.*, 733 F.2d 267, 275 (3d Cir. 1984); *see* Fed. R. Civ. P. 69(a)(1); Del. Code Ann. tit. 8, § 324(a).

Unless and until it obtains an attachment—the likelihood and timing of which cannot be predicted—Red Tree's interest in the PDVH shares is no different than the general economic interest it had as a creditor before receiving its judgments. And that interest does not support mandatory intervention, even if the sale process "may impede" Red Tree's "ability to recover." *Mountain Top*, 72 F.3d at 366. As the "circuits have generally concluded," a would-be intervenor cannot force its way into a case "solely to protect judgment funds [it] wishes to recover itself." *Deutsche Bank Nat'l Tr. Co. v. FDIC*, 717 F.3d 189, 195 (D.C. Cir. 2013) (collecting cases).

In a case directly on point, the Ninth Circuit held that a creditor's judgment alone cannot provide a sufficient interest under Rule 24(a). In *United States v. Alisal Water Corp.*, 370 F.3d 915 (9th Cir. 2004), a judgment creditor sought to intervene in an action on the theory that "its interests would be harmed in the event of a judicially ordered sale of [the debtor's] property." *Id.* at 918. The Ninth Circuit affirmed the district court's denial of intervention on the ground that the creditor's "sole interest" in the case was a general economic one—the "prospective collectability of a debt." *Id.* at 920; *see id.* (observing that a contrary result "would create an open invitation for virtually any creditor of a defendant to intervene in a lawsuit where damages might be awarded"). Relying on the settled rule that "the impaired ability to collect judgments that may arise from future claims does not give rise to a right of intervention," the Ninth Circuit held that "an allegedly impaired

ability to collect judgments arising from past claims does not, on its own, support a right to intervention." *Id.*

This Court's reasoning in *Liberty Mutual* compels the same result here. After the plaintiffs there had sued a manufacturer for asbestos-related injury, the manufacturer's insurer, Liberty Mutual, filed a separate action against the manufacturer seeking a declaration that it had fulfilled its obligations as far as the asbestos suits were concerned. 419 F.3d at 218-19. When some of the asbestos plaintiffs tried to intervene in Liberty Mutual's lawsuit, this Court held that they lacked a qualifying interest because they did not hold a "property interest" in the insurance policies or insurance proceeds. *Id.* at 222. Instead, they had "the kind of economic interest in the insurance proceeds" that "does not support intervention as a matter of right." *Id.* Although the asbestos plaintiffs lacked a judgment against the manufacturer, this Court made clear that the existence of one would not alter its analysis. In particular, this Court declined to follow *Teague v. Bakker*, 931 F.2d 259 (4th Cir. 1991), which held that plaintiffs with a judgment against an insured could intervene in an insurer's declaratory judgment action. *Liberty Mut.*, 419 F.3d at 223. As this Court explained, "the result in *Teague* is inconsistent with our analysis in *Mountain Top*," because judgment or not, "'the mere fact that a lawsuit may impede a third party's ability to recover in a separate suit ordinarily does not give the third party a right to intervene.'" *Id.* (quoting *Mountain Top*, 72 F.3d at 366).

Red Tree itself admits that a "'mere economic interest in the outcome of the litigation'" does not "justify intervention." Br. 19 (quoting *Mountain Top*, 72 F.3d at 366-67). While Red Tree relies on its judgments, it does not cite a single case from this Court holding that mere status as a judgment creditor confers a legal interest in specific property of a debtor. Instead, Red Tree simply invokes *Mountain Top*, but the intervenors there were "beneficiaries of an express trust" who could intervene to protect their legal interest in the specific "assets of the trust." 72 F.3d at 367. Since Red Tree lacks any analogous interest in the PDVH shares, *Mountain Top*'s dichotomy between general economic interests and specific legal interests *refutes* Red Tree's position—as confirmed by *Liberty Mutual*, which Red Tree does not even cite, much less distinguish.

In a last-ditch effort, Red Tree notes that certain bondholders were previously allowed to intervene. But those bondholders claimed to hold *secured interests* in the shares of a *PDVH subsidiary*. JA 82, 107. Whether or not such an interest properly qualified as a cognizable interest related to the sale of the PDVH shares themselves, the bondholders' intervention does not remotely support intervention as of right by mere holders of in personam judgments against PDVSA. In allowing the bondholders into the case, the district court did not (and could not) throw open the doors to every judgment creditor of PDVSA, despite their lack of any specific legal interest in the PDVH shares at issue in this case.

23

### 2.    The district court's contingent-writ declaration does not grant Red Tree a specific legal interest in the PDVH shares

Perhaps realizing that its judgments alone cannot carry the day, Red Tree also points to its supposed "attachment against the PDVH shares." Br. 23.  Although Red Tree misleadingly suggests throughout its brief that it already possesses an attachment, Br. 1, 3, 7, 19-20, 24, it ultimately acknowledges that the district court merely issued an order contingently declaring that it would issue a writ of attachment in the future *if, but only if*, OFAC were to either grant a license or lift the sanctions, Br. 8-9, 19, 23; *see Red Tree*, 2022 WL 1265516, at *1; *supra* at 10-11.  This contingent declaration is not itself an attachment ("conditional" or otherwise), and it does not create an interest in the PDVH shares supporting mandatory intervention.

As this Court has explained, "an interest contingent upon a favorable result" elsewhere "is not an interest sufficient to require intervention under Rule 24(a)." *Liberty Mut.*, 419 F.3d at 224 (cleaned up); *see* 6 *Moore's Federal Practice - Civil* § 24.03[2][a] (2023) ("[A]n interest that is … contingent on the future occurrence of a sequence of events is insufficient." (collecting cases)).  That includes situations where the contingency involves action by a governmental agency.  In *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174 (3d Cir. 1994), for instance, this Court explained that an entity that had "not yet settled with the government" with respect to a hazardous environmental site would lack a sufficient interest to intervene in a related lawsuit against others that might also be on the hook to cover clean-up costs.

*Id.* at 1184.  Because the "interest" of such an entity "may never ripen," the Court observed, it is nothing more than "a contingency," rather than "a mature, legally protectable interest."  *Id.*; *see Washington Elec. Coop. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990) (holding that an interest dependent on the "contingency" of a favorable determination by a state board "cannot be described as direct or substantial").

That is precisely the situation here.  As the district court recognized, any future issuance of a writ of attachment "is contingent upon future conduct by a third party (*i.e.*, the Executive Branch)."  *OIEG*, 2022 WL 611563, at *4; *see Red Tree*, 2022 WL 1265516, at *3 (granting "Red Tree the same relief that it granted to ConocoPhillips" in *OIEG*).  And Red Tree has "no control over whether the Executive Branch will permit [it] to obtain any stake in the PDVH Shares." *OIEG*, 2022 WL 611563, at *6 n.12.  Thus, for purposes of Rule 24(a)(2), Red Tree is in the same position as an ordinary judgment creditor of PDVSA.  The mere possibility that any of these creditors may eventually obtain an attachment on the PDVH shares is nothing more than a "speculative" interest "that is not enough to support intervention of right." *Liberty Mut.*, 419 F.3d at 225.

Tellingly, Red Tree cites no case treating such a contingency as a basis for mandatory intervention under Rule 24.  Though Red Tree quotes *Alcan Aluminum*, that case, as just discussed, emphasized that a contingent interest would *not* suffice.

25 F.3d at 1184. The movants there, though, had "already settled with the government," and "[t]he act of settling transform[ed] [the entity's] contribution right from a contingency to a mature, legally protectable interest." *Id.* In other words, it was their *statutory* right to contribution as a settling party that "the *substantive* law recognize[d]." *Id.* at 1185.

Red Tree has no such mature substantive interest in the PDVH shares. To the contrary, the contingent-writ declaration has no legal relevance under Delaware law, which is the applicable substantive law here, *see Crystallex I*, 932 F.3d at 134; Fed. R. Civ. P. 69(a). For purposes of attaching shares under Delaware law, an attachment is not effective, and a sale of shares cannot proceed, until (among other things) the writ of attachment is actually *issued and served*. *See* Del. Code Ann. tit. 10, § 5081 ("An execution shall not bind goods and chattels until it is delivered to the sheriff or other proper officer to be executed."); *see also* Del. Code Ann. tit. 8, § 324(a) (providing that, in the context of certificated shares, an "attachment is not laid and no order of sale shall issue unless" certain additional requirements are satisfied). Here, a "writ of attachment" has not been "issue[d] or serve[d]." *Red Tree*, 2022 WL 1265516, at *1. So the court's mere declaration of a future intent to issue a writ of attachment if OFAC were to allow that does not grant Red Tree any current interest in the PDVH shares under Delaware law. And a contrary conclusion would mean the declaration contravened OFAC's regulations, as shown below.

### 3.　Red Tree is judicially estopped from arguing that its judgments or the contingent-writ declaration create an interest in the PDVH shares

In all events, judicial estoppel precludes Red Tree from claiming any property interest in the PDVH shares based on its judgments or the declaration. "The doctrine of judicial estoppel prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 221 (3d Cir. 2015) (citing *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)). Yet that is exactly what Red Tree is trying to do here.

In arguing that registration of the judgments was valid despite OFAC's sanctions regime, Red Tree told the district court that the "underlying judgments … merely determined the parties' rights and obligations under a contract" and therefore "do not in and of themselves, cause any transfer of property." 22-mc-69 D.E. 11 at 17 (cleaned up). The district court agreed, ruling that Red Tree could register its judgments, notwithstanding OFAC's regulations, on the premise that "registration of a judgment 'is not connected to any specific blocked property.'" *Red Tree*, 2022 WL 1265516, at *2 (quoting *OIEG*, 2022 WL 611563, at *8).

Likewise, Red Tree disavowed any property interest when it persuaded the district court to grant the contingent-writ declaration. Red Tree argued that "a writ of attachment that depends on OFAC approval is at best an 'expectancy,' not a

property right." 22-mc-69 D.E. 11 at 11.  According to Red Tree, such relief "falls far short of creating a 'property interest.'"  *Id.* at 12.  The district court adopted the same view, finding that it could "authoriz[e] the eventual issuance of a writ of attachment" on the theory that the promise of future relief "does not create or perfect any interest in the PDVH Shares."  *OIEG*, 2022 WL 611563, at *7; *see Red Tree*, 2022 WL 1265516, at *2-3 (relying on *OIEG* and granting "the same relief").  The court thus held that its order did not "establish a 'contingent' proper[t]y interest prohibited by the regulations" and would provide "merely an expectancy and not a proper[t]y right."  *OIEG*, 2022 WL 611563, at *6 & n.12 (cleaned up).

Having "benefited from its original position" that its registered judgments and the contingent-writ declaration created a mere expectancy rather than a property interest in the PDVH shares (which would be prohibited by OFAC's sanctions regime), Red Tree may not change its position now and contend that those decrees do create such an interest.  *Delgrosso v. Spang & Co.*, 903 F.2d 234, 242 (3d Cir. 1990).  To allow Red Tree "to assume a position inconsistent with a position it had successfully relied upon in a past proceeding would most flagrantly exemplify playing fast and loose with the courts"—"an evil the courts should not tolerate."  *Id.* at 241 (cleaned up).  Regardless of whether the creation of even a mere "expectancy" was permissible under OFAC sanctions—the VPs maintain that it was not, 22-mc-69 D.E. 10 at 10-15—Red Tree critically relied on the "expectancy" characterization

to persuade the district court to issue the contingent-writ declaration.  It thus is bound to that characterization, and a "mere expectancy" is "not enough to support intervention of right."  *Liberty Mut.*, 419 F.3d at 224-25; *see, e.g.*, *Pub. Serv. Co. of New Hampshire v. Patch*, 136 F.3d 197, 205-06 (1st Cir. 1998) (explaining that because "these would-be intervenors root their professed economic interest in an as yet unrealized expectancy," their "asserted economic interest" is "fatally contingent").

### B.    Denial Of Intervention Would Not Impair Red Tree's Putative Interest In The PDVH Shares

Even if Red Tree somehow had a cognizable interest in the PDVH shares, denial of intervention would not "as a practical matter impair or impede [Red Tree's] ability to protect its interest."  Fed. R. Civ. P. 24(a)(2).  To satisfy the impairment element, "there must be 'a tangible threat' to the applicant's legal interest"; the mere possibility that it may "be incidentally affected" is "not sufficient."  *Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992).

That standard necessarily cannot be satisfied when the alleged harm would still occur even if intervention were permitted.  An applicant must establish that "*without intervention* the disposition of the action may, as a practical matter, impair or impede [its] ability to protect its interest."  *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 390 (2d Cir. 2006); *see Mountain Top*, 72 F.3d at 368 ("In order to meet the requirements of Rule 24(a)(2), proposed intervenors must also

demonstrate that their interest might become affected or impaired, as a practical matter, by the disposition of the action in their absence." (emphasis omitted)). Accordingly, where the proposed intervenor's "absence from th[e] litigation is not the cause of any harm to its interests," and its "presence" would not "allow it to protect those interests," it cannot satisfy the impairment element. *MasterCard*, 471 F.3d at 390. Red Tree cannot meet this standard because it would not be able to protect its purported interest in the PDVH shares even if it were to intervene.

Red Tree insists that it desires to intervene solely "to ***shape the sales process*** as a Sale Process Party"—a status that would give it specific "objection and consultation rights." Br. 21; *see* Br. 1, 9, 15 (repeatedly disclaiming any interest in modifying the sale procedures order). But the status and rights of sale process parties under the sale procedures order are *unrelated to* being a formal party in the litigation, so intervention is immaterial. The district court has conferred sale-process-party rights under the sale procedures order on *only* those entities that have participated in designing the sale process and have equally shared the special master's fees. *See* JA 337-38, 656 & n.8, 716. The district court therefore granted ConocoPhillips the status and rights of a sale process party because it met those criteria, even though it is not a party at all. *See supra* at 8. Conversely, the court denied sale-process-party status to the bondholders—even though they were intervenors—because they did not meet those criteria. *See id.*

30

As the district court emphasized, Red Tree also does not meet the criteria to be a sale process party. Red Tree sat on the sidelines while the sale procedures order was designed. And even now it remains "unwilling to pay [its] fair share" and seeks to "instead only have to pay a pro rata share … and only going forward." JA 5; *see* Br. 9, 26. So Red Tree would not be entitled to be a sale process party whether or not it intervened. In short, Red Tree's "problems here are due to [its own] actions, not [its] absence from this litigation" as a party. *MasterCard*, 471 F.3d at 388.

Red Tree asserts that the district court "should have addressed th[e] question [of fees] separately from [its] motion to intervene." Br. 27. But the only case Red Tree cites merely states that "the district court must state the reasons for its discretionary decisions or it must be clear from the record that its exercise of discretion was based on consideration of the relevant factors." *In re White Savage Assocs.*, 860 F.2d 1090, 1988 WL 111612, at *3 (9th Cir. Oct. 12, 1988)). Here, the court expressly stated that Red Tree's refusal to pay the fees required of the sale process parties was a consideration supporting denial of Red Tree's motion to intervene solely in order to participate as a sale process party, JA 5; and that consideration is clearly grounded in Rule 24(a)'s impairment requirement for intervention, *see MasterCard*, 471 F.3d at 390.

Red Tree also briefly asserts that the court's fee allocation is "incorrect on the merits" under Federal Rule of Civil Procedure 53(g), because other parties are "more

responsible" for the special master's expenses.  Br. 27.  But Red Tree's perfunctory reliance on that single factor does not come close to showing that the district court abused its discretion under Rule 53(g) in deciding that Red Tree should not be allowed to avoid an equal share of the costs of being a sale process party while demanding equal participation benefits.  *See Newton v. Consol. Gas Co. of New York*, 259 U.S. 101, 105 (1922); *Glover v. Wells Fargo Home Mortg.*, 629 F. App'x 331, 339 (3d Cir. 2015).  And so Red Tree falls doubly short of showing an abuse of discretion in denying intervention under Rule 24.  *See Pennsylvania*, 888 F.3d at 57.

### C.    ConocoPhillips Will Adequately Protect Red Tree's Asserted Interest In The Sale Of The PDVH Shares

Relatedly, Red Tree's asserted interest in the sale of the PDVH shares to satisfy Crystallex's judgment is already "adequately represent[ed]" by ConocoPhillips.  Fed. R. Civ. P. 24(a)(2).  Representation by an existing litigant "is generally considered adequate" unless the representative has colluded with the party opposing the proposed intervenor, has failed to litigate diligently, or has "an interest adverse to the proposed intervenor."  *Delaware Valley*, 674 F.2d at 973.  Red Tree invokes the adverse-interest prong, Br. 23, but its argument fails.

ConocoPhillips and Red Tree are *identical* when it comes to their asserted interests in the *Crystallex* sale process.  Both are non-parties who hold judgments against PDVSA.  *See OIEG*, 2022 WL 611563, at *2.  Both have received an order contingently declaring that the district court would issue a writ of attachment if

32

OFAC were to allow that in the future, but do not currently have an attachment. *See id.* at \*9. As neither has an "Attached Judgment" under the sale procedures order, neither has the "guaranteed right to 'credit bid'" that Crystallex possesses, and neither will receive proceeds from the sale to satisfy their judgments. Br. 21; *see* JA 738, 740-41. Consequently, both have the same economic interest in ensuring that a sale to satisfy Crystallex's judgment does not undervalue the shares, so that the residual value will be "sufficient to cover [their] judgment[s]" if and when OFAC were to allow them to execute on their judgments. Br. 22; *see, e.g.*, 17-mc-151 D.E. 180 at 7 (ConocoPhillips urging the district court to adopt sale procedures that would "maximize the value received in a judicial sale of privately held stock of this sort under these circumstances").

Accordingly, although ConocoPhillips did not and could not intervene in this case, *see supra* at 8, 19-26, when it exercises its consultation and objection rights under the sale procedures order, it has "every incentive" (Br. 23) to act precisely as Red Tree would. Although Red Tree asserts that ConocoPhillips is one of its "competitors for the limited PDVSA asset pool," *id.*, that is a red herring. Red Tree fails to identify any plausible way in which ConocoPhillips could protect its own interests in the *Crystallex* sale process without effectively protecting Red Tree's interests too. That is especially so because the approximate outstanding amount of the ConocoPhillips judgments at issue ($1.3 billion) is *over five times larger* than

Red Tree's ($260 million), *see* JA 724, which explains why ConocoPhillips was willing to invest more than $1 million to shape the design of the sale process order while Red Tree free-rode on those efforts.  Given the relative size of the judgments, Red Tree does not and cannot contend that ConocoPhillips plausibly could exercise its rights concerning the sale process in a manner that protected its ability to recover on its judgments while impairing Red Tree's ability to do the same.  In fact, far from viewing itself as Red Tree's competitor in the context of the *Crystallex* sale process, ConocoPhillips did not even object to Red Tree's participation as a sale process party, JA 777, undoubtedly because it shares the same incentives.  The district court thus was plainly correct in its "confiden[ce] that Red Tree will not be seriously harmed by the denial of its motion."  JA 4.

### D.    Under Red Tree's Own Theory For Intervention, Its Motion Was Untimely

If Red Tree were correct that it has a specific legal interest in the PDVH shares—though it is not—then its intervention motion was untimely.  In assessing timeliness under Rule 24(a), delay is generally "measured from the time the proposed intervenor knows or should have known of the alleged risks to his or her rights."  *Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pennsylvania*, 701 F.3d 938, 950 (3d Cir. 2012).  And in evaluating whether that delay is disqualifying, this Court considers the stage of the proceeding, any prejudice the delay may cause the parties, and the reason for the delay.  *Id.* at 949.

Because Red Tree's money judgments and the district court's contingent-writ declaration do not provide Red Tree with a legal interest in the PDVH shares, *see supra* at Part I.A, those decrees are entirely irrelevant to the timeliness inquiry under Rule 24(a)(2). Red Tree had the same general economic interest in the shares *after* receiving those decrees in 2022 as it did in the years *before*. If, however, that general interest were somehow deemed sufficient, then Red Tree could have—"and should have"—sought intervention in 2019 based on its pending claims against PDVSA. JA 3 n.2. As the district court found, "Red Tree clearly recognized the potential impact of this proceeding on its ultimate efforts to collect as far back as 2019." *Id.* Red Tree's sole explanation for its delay is that it needed the 2022 decrees, Br. 19, which, again, are immaterial under Rule 24(a)(2). Red Tree thus finds itself caught between Scylla and Charybdis: Either it does not yet have a qualifying interest, or it has had one since 2019 but waited until November 2022 to try to intervene.

Moreover, even if the 2022 decrees were treated as legally material, Red Tree still could not justify delaying its attempt to intervene for another six months after entry of the contingent-writ declaration. This Court has treated comparable—or even shorter—delays as a basis for denying intervention on untimeliness grounds. *See, e.g.*, *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 134 F.3d 133, 140 n.1 (3d Cir. 1998) (four-month delay); *Hoots v. Pennsylvania*, 495 F.2d 1095, 1097 (3d Cir. 1974) (six-month delay).

Intervention at this late stage would also prejudice the sale process parties. *See Benjamin*, 701 F.3d at 949. During Red Tree's six-month delay, the sale process parties labored—and paid—to participate in the design of the sale procedures. *See* JA 718-20 (chronicling work during the time). Red Tree opted not to participate and instead waited on the sidelines until a month *after* the district court finalized the sale procedures order. JA 716, 757. Permitting intervention now would reward Red Tree's free-riding, at the expense of the sale process parties.

That is so even though Red Tree purportedly "disclaim[s]" any effort to substantively modify the order. Br. 15. Red Tree disregards that the order grants special participation rights in the sale process *only* to the three identified groups who had participated in the design of the process—the VPs, Crystallex, and ConocoPhillips. JA 716; *see* JA 726-28, 731-33, 735, 745-46. Adding a fourth entity thus *would* modify the order. Moreover, it is not at all clear that the district court would have granted the same consultation and objection rights—or would maintain those rights—if the number of participants were expanded and the process became more cumbersome. As the court put it, allowing more sale process parties "at this late stage will make an already challenging process even more unwieldy and impracticable." JA 5. While Red Tree notes (Br. 25) that it is the only creditor currently seeking to be added as a sale process party, that misses the point. If this Court holds judgment creditors are now entitled to intervene—and participate as sale

process parties without paying full freight—further interventions and associated complications would be all but inevitable, *see supra* at 4-5, prejudicing the interests of the current sale process parties.

Finally, Red Tree offers no meaningful explanation for its months-long delay in moving to intervene. *See Benjamin*, 701 F.3d at 949. While Red Tree vaguely alludes to "contact[ing]" the special master and "follow[ing] up *ten times*" in the months leading up to its intervention request, those communications could not reasonably have been, as Red Tree suggests, "attempt[s] to resolve matters informally." Br. 20. The district court had already ruled back in 2021, in the context of the bondholders, that those who "wish to be included in the discussions with the Special Master" must pay an equal share of the fees and that "limited participation" rights were not an option. JA 338. Red Tree, of course, was "unwilling to pay this fair share." JA 5. The special master thus plainly could not have authorized the free-ride that Red Tree now seeks, and Red Tree had no justification for waiting until after the sale procedures order was entered to raise the issue with the court itself. Given these circumstances, the court's denial of intervention on untimeliness grounds was not an abuse of discretion.

## II.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING RED TREE'S REQUEST FOR PERMISSIVE INTERVENTION

Red Tree's argument for permissive intervention under Rule 24(b) is a non-starter. A district court's "denial of a motion for permissive intervention 'has

virtually never been reversed'" as an abuse of discretion. *Liberty Mut.*, 419 F.3d at 227. This case does not come close to meriting a rare exception.

To begin, the myriad reasons why Red Tree cannot intervene as a matter of right amply justify the district court's decision not to "exercise its discretion to permit intervention" either. JA 4-5; *see Brody*, 957 F.2d at 1124 ("[I]f intervention as of right is not available, the same reasoning would indicate that it would not be an abuse of discretion to deny permissive intervention as well.").

Furthermore, Red Tree cannot even satisfy the minimal requirement for permissive intervention of raising "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In the context of intervention, "[t]he words 'claim[] or defense[]'" in Rule 24 "'manifestly refer to the kinds of claims or defenses that can be raised in courts of law as part of an actual or impending law suit.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 n.18 (1997). After all, intervention is "the legal procedure by which a third party is allowed to become a party to the litigation." *U.S. ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 933 (2009) (cleaned up). And that party status is why Rule 24(c) provides that any motion to intervene—permissive or otherwise—"must … be accompanied by a pleading that sets out *the claim or defense* for which intervention is sought." Fed. R. Civ. P. 24(c) (emphasis added); *see Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 548 (1986) (explaining that under Rule 24, a would-be

intervenor "had no right to participate in the proceedings" as a party "without first filing an appropriate motion or pleading setting forth the claim or defense that he desired to assert").

Tellingly, Red Tree's brief never identifies the "claim or defense" it seeks to assert. Nor do any of its filings below, despite Rule 24(c)'s clear mandate, which is reason enough to affirm the denial of intervention. Red Tree's silence on this score is as unsurprising as it is fatal, for Red Tree does not have any cognizable interest in the PDVH shares that would allow it to assert any claim or defense in the *Crystallex* sale process. *See supra* at Part I.A. While Red Tree's desire to opine on pending issues regarding the sale process may warrant an amicus brief, it cannot satisfy the "claim or defense" threshold necessary for permissive intervention. In that respect, Red Tree is no different than a law professor or economist who has thoughts on how best to conduct the sale process. None of them has anything even remotely resembling a "claim or defense" to assert in connection with these proceedings.

In the district court, Red Tree attempted to deflect this problem by noting that it "is similarly situated to ConocoPhillips." JA 772. But while ConocoPhillips has participation rights under the sale procedures order, it did not and could not intervene in this action, permissively or otherwise, and thus never needed to assert a "claim or defense." *See supra* at 33. That makes ConocoPhillips an improper proxy for the Rule 24(b) analysis, especially because Red Tree has abandoned any argument that

it should be made a sale process party even without intervening. *See supra* at 13 n.1. What Red Tree's analogy to ConocoPhillips does confirm, though, is that the latter adequately represents Red Tree's asserted economic interests. If, as Red Tree has contended, "issues of fact and law about the design of the sale process, the meaning or application of OFAC sanctions, and the participation of other creditors are just as relevant to Red Tree's claims as they are to ConocoPhillips'," JA 772, then ConocoPhillips can address them for all such creditors. *See supra* at Part I.C. In short, Red Tree does not raise any questions related to any "claim or defense" it possesses, and the district court did not abuse its discretion in denying intervention.

\* \* \*

The only thing complicated about this appeal is how many different grounds there are to affirm the denial of intervention. Red Tree's money judgments and the contingent-writ declaration do not create a specific legal interest in the PDVH shares. The denial of intervention would not impair Red Tree's putative interest because Red Tree would not be made a sale process party even if it were granted intervention. Red Tree's asserted economic interest is fully shared and protected by ConocoPhillips, who is in the identical position to Red Tree vis-à-vis Crystallex and the VPs. In no circumstance can Red Tree justify its lengthy delay in seeking to intervene. And Red Tree does not even have a claim or defense to assert concerning the sale process. Whatever route is chosen, all roads lead to affirmance.

# CONCLUSION

This Court should affirm the denial of Red Tree's motion to intervene.

Dated:  March 24, 2023

Respectfully submitted,

Joseph D. Pizzurro
Kevin A. Meehan
Juan O. Perla
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Ave.
New York, NY  10178
(212) 696-6000

*Counsel for Petróleos de Venezuela, S.A.*

Hashim M. Mooppan
  *Counsel of Record*
Gregory M. Shumaker
Brinton Lucas
Caleb P. Redmond
JONES DAY
51 Louisiana Ave. NW
Washington, DC  20001
(202) 879-3939
hmmooppan@jonesday.com

Nathan P. Eimer
Daniel D. Birk
Emily Sullivan
EIMER STAHL LLP
224 South Michigan Ave., Suite 1100
Chicago, IL  60605
(312) 660-7600

*Counsel for CITGO Petroleum Corporation and PDV Holding, Inc.*

# COMBINED CERTIFICATIONS

1.     Pursuant to Third Circuit L.A.R. 28.3(d), at least one of the attorneys whose names appear on this brief, including the undersigned, is a member in good standing of the bar of this Court.

2.     This brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 10,292 words.  This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced 14-point serif font (Times New Roman), using Microsoft Word.

3.     On March 24, 2023, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

4.     Pursuant to Third Circuit L.A.R. 31.1(c), the text of the electronic version of this document is identical to the text of the paper copies filed with the Court.

5.     Pursuant to Third Circuit L.A.R. 31.1(c), Microsoft Safety Scanner version 1.385.1020.0 has been run on this electronic file and no virus was detected.


Dated: March 24, 2023                    */s/* Hashim M. Mooppan
                                         Hashim M. Mooppan
                                         *Counsel for CITGO Petroleum*
                                         *Corporation and PDV Holding, Inc.*